# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS DENNIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-6889** |
| **DARREL VANNOY, WARDEN** | **SECTION: "G"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Travis Dennis, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On August 24, 2011, he was convicted of second degree murder under Louisiana law.[1] On September 15, 2011, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] After he was granted an out-of-time appeal,[3] the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on May

---

[1] State Rec., Vol. 5 of 6, transcript of August 24, 2011, p. 123; State Rec., Vol. 1 of 6, minute entry dated August 24, 2011; State Rec., Vol. 1 of 6, jury verdict form.

[2] State Rec., Vol. 5 of 6, transcript of September 15, 2011; State Rec., Vol. 1 of 6, minute entry dated September 15, 2011.

[3] State Rec., Vol. 1 of 6, Order dated July 31, 2012.

16, 2013.[4]  The Louisiana Supreme Court then denied his related writ application on December 6, 2013.[5]

On April 3, 2014, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on July 25, 2014.[7]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on October 24, 2014,[8] and by the Louisiana Supreme Court on September 25, 2015.[9]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[10]  The state filed a response conceding that the application is timely but arguing that petitioner's claims have no merit.[11]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[4] State v. Dennis, 118 So.3d 1166 (La. App. 5th Cir. 2013); State Rec., Vols. 1 and 2 of 6.
[5] State v. Dennis, 129 So.3d 530 (La. 2013); State Rec., Vol. 2 of 6.
[6] State Rec., Vol. 2 of 6.
[7] State Rec., Vol. 2 of 6, Order dated July 25, 2014.
[8] State ex rel. Dennis v. Cain, No. 14-KH-662 (La. App. 5th Cir. Oct. 24, 2014); State Rec., Vol. 2 of 6.
[9] State ex rel. Dennis v. State, 178 So.3d 160 (La. 2015); State Rec., Vol. 2 of 6.
[10] Rec. Doc. 1.
[11] Rec. Doc. 10.

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute*

> *for ordinary error correction through appeal.  As a condition for obtaining habeas*
> *corpus from a federal court, a state prisoner must show that the state court's ruling*
> *on the claim being presented in federal court was so lacking in justification that*
> *there was an error well understood and comprehended in existing law beyond any*
> *possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> In the early morning hours of February 22, 2010, Ronald Smith was shot
> and killed in the area of Manhattan Boulevard and the Westbank Expressway in
> Jefferson Parish.  The facts leading up to the shooting are as follows:
> In the late evening hours of February 21, 2010, Ronald Smith and
> Terineisha Ealy were visiting with each other and decided to walk to the store.[FN
> 2]  At some point, they encountered Dishall Davis, Smith's former girlfriend, who
> asked them to buy her some cigarettes at the store.  Smith and Ealy proceeded to
> the store and then returned to Smith's apartment, but they did not buy Davis her
> cigarettes.  Later that evening, at approximately 11:30, Davis knocked on Smith's
> door looking for her cigarettes.  After seeing Ealy in Smith's apartment and finding
> out that Smith had not bought her the cigarettes, Davis got angry, walked up behind
> Smith, pulled his hair, and hit him.  A physical altercation ensued between Smith
> and Davis, and Ealy had to break up the fight.  When Smith then carried Davis out
> of the house by her jacket, she said she would call the police and report that he hit
> her.  The two began fighting again, and Ealy broke up the fight for a second time.
> Smith and Ealy went inside.  Davis left and called the police.

[FN 2]  Ms. Ealy testified that she had known Ronald Smith for about two years prior to the shooting, but had started dating him on the night of February 21, 2010.

A couple of hours later, at approximately 1:30-2:00 a.m. on February 22, 2010, Ealy and Smith decided to walk to a nearby store.  After they left the Exxon station, Ealy and Smith were walking through the parking lot of the daiquiri shop when she noticed a car coming with its "high beams" on.  The car swerved right in front of them and stopped.  According to Ealy, defendant hopped out of the car with a shotgun in his hand and said, "What that you told Dishall?"  Ms. Ealy said that she and Smith looked at each other, not knowing what he was talking about because Smith had said nothing about him earlier during the altercation.  Defendant then told Smith, "Lay it down.  Give me what you got in your pockets."  As Smith was checking his pocket, defendant said, "You think I'm playing?"  According to Ealy, Smith tried to turn around and run, but defendant shot at him.  When Smith tried to run again, defendant shot at him a second time, causing Smith to fall.

Defendant then pointed the gun at Ealy and told her that he would kill her if she said anything.  Defendant returned to his car, looked at Smith, and said, "Ha, ha. Rielow, boy I told you I was going to get you."  After defendant fled in his car, a Chevrolet Malibu, Ealy ran to the highway and flagged down a police officer.  Deputy Jeffrey Reynolds of the Jefferson Parish Sheriff's Office responded to her call for help.  As the officer exited his unit, Ealy informed him that her boyfriend had just been shot.  Officer Reynolds went around the corner of the daiquiri shop to the parking lot where Ealy had directed him and observed a black male lying face down on the ground.  Although medical assistance was sought, Smith was determined to be dead.[FN 3]

[FN 3]  At trial, it was stipulated that Smith died of a gunshot wound to the middle of his chest.

Ealy advised Deputy Reynolds that the shooter was someone she knew named Travis, who had been in a relationship with Dishall Davis.  As a result of information obtained through police investigation, Detective Gary Barteet of the Jefferson Parish Sheriff's Office subsequently interviewed defendant.  After being advised of his Miranda[FN 4] rights, defendant gave a statement and initially denied any involvement in Smith's death.  Defendant claimed that he got off of work after 8:00 p.m., went to his house, and never left.  He admitted that he owned a Chevy Malibu, but said it stayed parked at his residence all night.  However, he subsequently gave another statement in which he admitted his involvement.  In describing the incident as a "self-defense-type encounter," defendant said that he went to confront Smith about the "foolishness" and Smith advanced toward him in an aggressive manner.  He told the detective that he was unarmed, but then retreated to his vehicle to retrieve the shotgun after Smith advanced toward him.

[FN 4]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6

At trial, defendant testified on his own behalf. According to defendant, on the night of the incident, he received a call from Davis who wanted him to go over to her residence. At approximately 2:00-3:00 a.m., he went to her apartment, but left when she did not answer her phone and he could not get in the apartment. As he left through the parking lot, he saw Smith and Ealy. Defendant approached Smith and asked why they were "beefing" over Davis. He claimed he was trying to "squash" what was going on between them over Davis, who went back and forth between them. According to defendant, Smith said he should have killed defendant and Davis, and Ealy was also "bad mouthing." Defendant remained standing by his car, inside the driver's doorway, unarmed, with the door open. He claimed that Smith was aggressive and had a bag and kept "running up" on him. Defendant told Smith to back up, but he kept approaching and running his mouth.

According to defendant, Smith dropped the bag, put his hand in his pocket, and made a "clutching" movement, as if he was trying to retrieve a gun or "something." At this point, defendant retrieved his gun from the car, shot Smith, and left. Defendant testified that Smith's movement like he was getting a gun made him fear for his life because he knew Smith always carried a gun.[12]

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

On appeal, defendant challenges the sufficiency of the evidence used to convict him of second degree murder. He specifically contends that the State failed to prove that he had the specific intent to kill or cause great bodily harm and that, at most, he should have been convicted of manslaughter. Defendant further asserts that the killing was in self-defense because he thought his life was in danger when he confronted Smith about abusing Dishall Davis.

The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Under this standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole

---

[12] State v. Dennis, 118 So.3d 1166, 1169-70 (La. App. 5th Cir. 2013); State Rec., Vols. 1 and 2 of 6.

record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.  State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.  Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.  State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.

When the trier of fact is confronted with conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.  In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict.  Further, it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.  State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 718, writ denied, 12-2024 (La. 1/25/13), 105 So.3d 713.

In order to support a conviction for second degree murder, the State was required to prove the killing of a human being by defendant, and that defendant had the specific intent to kill or inflict great bodily harm.  See LSA-R.S. 14:30.1; State v. King, 11-767 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, 1152, writ denied, 12-0660 (La. 9/14/12), 99 So.3d 35.  Defendant challenges the specific intent element of this offense.

Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  LSA-R.S. 14:10(1).  Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries.  State v. Sinceno, 99 So.3d at 719.  Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun.  The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.  State v. King, 88 So.3d at 1152.  Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard.  State v. Sinceno, 99 So.3d at 719.

Applying the evidence in this case to these legal principles, we find that the State carried its burden of proving that defendant acted with specific intent to kill or inflict great bodily harm.  Defendant admitted that he shot the victim with a shotgun, and that the gun fired twice.  Ealy, an eyewitness to the shooting, identified defendant as the shooter and testified that the victim was attempting to run away when defendant shot the first time.  She said the victim was shot at again as he continued to run.  Moreover, Ealy testified that as defendant left the scene, he looked in the victim's direction and said, "Ha, ha. Rielow, boy I told you I was going to get you."[FN 5]  Thus, the State proved beyond a reasonable doubt that defendant acted with specific intent to kill or inflict great bodily harm.

[FN 5]  Ms. Ealy testified that she knew Ronald Smith as "Rielow."

Defendant does not deny that he shot the victim, but suggests that he acted in self-defense. He contends that when he confronted the victim about abusing Dishall Davis, the victim made a movement that led defendant to believe that he was trying to retrieve a gun. Thinking his life was in danger, defendant got his weapon and shot first.

When a defendant in a homicide prosecution claims self-defense or the defense of another, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. State v. Reed, 11-507 (La.App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-0644 (La. 9/14/12), 97 So.3d 1014. The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. According to LSA-R.S. 14:20(A)(1), a homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."

A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know his desire is to withdraw and discontinue the conflict. LSA-R.S. 14:21. In addition, while there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. King, 88 So.3d at 1153.

The determination of a defendant's culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. State v. Sinceno, 99 So.3d at 720.

In the instant case, the jury was presented with two versions of the events at the time of the shooting. The State presented evidence that as Smith and Ealy were walking in the parking lot, defendant swerved his car right in front of them and stopped. Defendant exited the vehicle with a gun in his hand and confronted Smith about the situation involving Davis. Defendant then told Smith to "give me what you got in your pockets." As Smith checked his pocket, defendant said, "You think I'm playing?" Smith then tried to turn around and run, but defendant shot at the unarmed victim. Smith continued in his attempts to flee until he was shot again and fell to the ground.

Another witness, Michael Walker, observed a vehicle pull up in a parking lot near a black male and a black female who were walking. Walker watched a person jump out of the vehicle with something long in his hand. He saw the person run behind the daiquiri shop and then heard a "pow." Walker heard another shot and a female screaming. This witness then observed someone run back to the Chevrolet Malibu and speed off.

In contrast to this testimony, defendant testified that when he saw Smith and Ealy walking in the parking lot, he stopped his car and asked Smith why they were "beefing" over Davis. Defendant claimed he was trying to "squash" what was

going on between them over Davis, who went back and forth between them. According to defendant, Smith said that he should have killed him and Davis. At this time, defendant testified that he was unarmed and that he remained standing by his car, inside the open driver's door. However, Smith became aggressive and kept approaching defendant. Even though defendant told Smith to back up, Smith kept coming toward defendant and running his mouth. Smith then dropped the bag he was carrying, put his hand in his pocket, and made a "clutching" motion, as if he was trying to retrieve a gun. It was at this point that defendant retrieved the shotgun from his vehicle and shot Smith. Defendant claimed that he feared for his life when he saw Smith's "clutching" motion because he knew Smith regularly carried a gun and had pulled a gun on defendant on previous occasions.

The jury heard this conflicting testimony and apparently gave more credit to the version of events as portrayed by the State witnesses. As such, the jury could have reasonably concluded that defendant could not have believed that he was in imminent danger of losing his life or receiving great bodily harm when the victim was not attacking him, was attempting to run away, and was unarmed. Therefore, we find that the State proved beyond a reasonable doubt that defendant did not act in self-defense.

On appeal, defendant also suggests that the evidence at best supported a verdict of manslaughter. Defendant contends that when he approached Smith, he was overwhelmed with anger and "lost control" because Smith had brutally beaten Davis earlier that evening.

LSA-R.S. 14:31(A)(1) defines manslaughter as a homicide that would be either first or second degree murder, "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed."

"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove the mitigatory factors by a preponderance of the evidence. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. State v. Arias-Chavarria, 10-116 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 431-32. The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Sinceno, 99 So.3d at 721.

In the instant case, as evidenced by its verdict of second degree murder, the jury obviously rejected the responsive verdict of manslaughter. The evidence supports the jury's determination.

As noted by the State in its appellate brief, at trial defendant did not claim "sudden passion" or "heat of blood." At trial, evidence was presented that there was a physical altercation between Dishall Davis and the victim several hours prior

to the shooting of the victim by defendant.  However, defendant was not present at the time of the altercation, and during his trial testimony, defendant never specifically testified that he knew about the details of the altercation that had occurred hours before.  In fact, defendant testified that Davis called him and wanted him to go over to her apartment.  Defendant did, but then left after Davis did not answer the phone and he could not get into the apartment.  As defendant left through the parking lot, he saw Smith and Ealy walking.  At trial, defendant testified regarding his reasons for confronting Smith.  He claimed that he approached Smith and asked why they were "beefing" over Davis.  Further, defendant testified that he wanted to "squash" the issues between him and the victim over Davis.  He never claimed that he was angry or wanted to confront the victim regarding the abuse he had supposedly inflicted on Davis.

During his trial testimony, defendant also claimed that at the time of his encounter with Smith, Smith was "running up" on him and approaching him. Defendant did not claim that the victim touched him.  Defendant further asserted at trial that the victim was "running off at the mouth."  However, words or gestures, regardless of how insulting, are not sufficient to reduce a homicide from murder to manslaughter.  State v. Sinceno, 99 So.3d at 721.  Moreover, Ealy testified that the victim was shot as he was attempting to run from defendant and further that defendant did not have a gun on him at the time of the shooting.

Considering the circumstances of this case, defendant's actions, and the victim's injuries, we find that the evidence was constitutionally sufficient to support the jury's finding that defendant had the specific intent to kill or inflict great bodily harm on the victim and that defendant did not act in self-defense.  Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence used to convict him of second degree murder are without merit.[13]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[14]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

---

[13] State v. Dennis, 118 So.3d 1166, 1170-74 (La. App. 5th Cir. 2013); State Rec., Vols. 1 and 2 of 6.
[14] State v. Dennis, 129 So.3d 530 (La. 2013); State Rec., Vol. 2 of 6.

As correctly noted by the Louisiana Fifth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

To the extent that petitioner is contending that the state failed to meet its burden to prove that he had the specific intent to kill or inflict great bodily harm, that contention obviously has no merit.  The evidence showed, and petitioner does not dispute, that he pointed a shotgun at the victim and pulled the trigger.  Under Louisiana law, that action is sufficient for the jury to find that petitioner acted with specific intent.  Hudson v. Cain, Civ. Action No. 05-1638, 2007 WL 2228598,

at *4 (E.D. La. July 30, 2007) ("Specific intent may be inferred from a defendant's act of pointing a gun and firing at a person."); State v. Hoffman, 768 So.2d 542, 585 (La. 2000); State v. Procell, 365 So.2d 484, 492 (La. 1978). Further, Ealy testified that as petitioner left the scene, he looked in the victim's direction and said, "Ha, ha. Rielow, boy I told you I was going to get you." That, too, is obviously indicative that petitioner acted with specific intent.

To the extent that petitioner is arguing that the state failed to meet its burden to prove that he did not act in self-defense, that argument is likewise meritless. Ealy, an eyewitness to the shooting, testified that petitioner was the aggressor and that the victim was shot as he was attempting to run away. It is clear that the testimony of a single, uncorroborated eyewitness, if found credible by the trier of fact, is constitutionally sufficient to support a conviction. United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); accord Davis v. Cain, Civ. Action No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), adopted, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); Colbert v. Cain, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), adopted, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012). Further, to the extent that petitioner is arguing that the jurors should not have found Ealy credible, that simply is not for this Court to say. Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012

WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012);

Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Lastly, to the extent that petitioner is contending that the evidence supported a conviction of only manslaughter, that contention is clearly incorrect.  It is true that Louisiana law provides that a defendant who would otherwise be guilty of second degree murder can found guilty of manslaughter if "the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  La. Rev. Stat. Ann. § 14:31(A)(1).  However, as the state court correctly noted, "sudden passion" and "heat of blood" are mitigatory factors.  The state does not bear the burden to disprove the mitigatory factors, rather, *the defendant bears the burden to prove that they existed by a preponderance of the evidence.* See, e.g., Trosclair v. Cain, Civ. Action No. 12-2958, 2014 WL 4374314, at *9 (E.D. La. Sept. 2, 2014) ("A defendant has the burden of proving these mitigating factors.  Thus, … the issue to be resolved is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence." (quotation marks omitted)); State v. Arias-Chavarria, 49 So.3d 426, 431-32 (La. App. 5th Cir. 2010).  Here, as the state court also correctly noted, petitioner introduced no evidence whatsoever proving that he acted with "sudden passion" or "heat of blood."  Therefore, obviously, a rational trier of fact could have found that the mitigatory factors were not established by *any* evidence, much less the required preponderance of the evidence.  In light of that fact, as well as the fact that the evidence was clearly constitutionally sufficient to support a conviction of second degree murder for the reasons already explained, this contention obviously fails.  See, e.g., Madrid v. Cain, Civ. Action No. 15-965, 2016 WL 6304686, at *12 (E.D. La. June 6, 2016), adopted, 2016 WL 6276848 (E.D. La. Oct. 27, 2010).

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## B.  Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel both at trial and on appeal. In the state post-conviction proceedings, the state district court denied those claims, holding:

> Petitioner has filed an application for post-conviction relief, alleging ineffective assistance of counsel in that trial counsel failed to require the trial court to hold a hearing on his <u>Batson</u> objection prior to trial, and appellate counsel failed to raise the issue on appeal. The State has filed a response, as ordered by the court.

> <u>Ineffective Assistance of Counsel</u>
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. <u>State v. Legrand</u>, 2002-1462 (La. 12/3/03), 864 So.2d 89.

> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the <u>Strickland</u> test must be established before relief will be granted by a reviewing court.

> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. <u>State v. Soler</u>, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in the instant application and argued in the petitioner's memorandum in support.

Petitioner first argues that trial counsel was ineffective in failing to hold a hearing on his Batson objection prior to trial. The court finds petitioner's argument misconstrued. As the State points out in its response, there was no Batson challenge, as defense counsel did not argue that the State peremptorily challenged jurors on the basis of race alone. Defense counsel made no Batson challenge during voir dire. Rather, after jury selection was complete, defense counsel made an observation of the composition of the jury may not reflect the racial composition of Jefferson Parish. No formal objection was lodged, and no Batson allegations – that jurors were challenged and excused on the basis of race – were presented. There was no reason to conduct a Batson hearing, as there were no Batson objections lodged. Petitioner's claim has no merit as he is mistaken regarding the facts of the case. Petitioner fails to prove any deficiency in counsel's performance, or any prejudice resulting therefrom.

Petitioner next argues that appellate counsel was ineffective for failing to pursue the Batson challenge on direct appeal. In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant.["] Evitts v. Lacey, 469 U.S. 387, 394 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["] Jones v. Barnes, 463 U.S. 745 (1983). This is true even where the weaker arguments have merit. Id. at 751-2.

When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the Strickland test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised. United States v. Phillips, 210 F.3d 345, 350 (5 Cir. 2000).

The court finds no merit to petitioner's claim of ineffective appellate counsel. Appellate counsel is limited to the record. In this case, there were no Batson challenges, objections, or rulings. Defense counsel never argued that the State improperly excused jurors on the basis of race. As there were no Batson objections, there was no reason for the appellate attorney to appeal. The court finds no merit to this claim, as petitioner fails to prove that appellate counsel was deficient, or that any prejudiced resulted. Furthermore, petitioner fails to establish that the appellate counsel [sic] would have granted relief had this issue been raised. (The court notes that the State has provided excerpts of the transcript pertaining to defense trial counsel's arguments for the court's review.)[15]

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal then similarly held:

---

[15] State Rec., Vol. 2 of 6, Order dated July 25, 2014.

After considering the state and federal jurisprudence concerning an ineffective assistance of counsel claim, the trial judge found relator's claims of ineffective assistance of counsel to be without merit under the two-prong test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, §13 of the Louisiana Constitution.  State v. Johnson, 08-1156 (La. App. 5 Cir. 4/28/09), 9 So.3d 1084, 1092, writ denied, 09-1394 (La. 2/26/10), 28 So.3d 268.  To prove ineffective assistance of counsel, a defendant must prove both that his attorney's performance was deficient and that he was prejudiced by the deficiency.  Id., 9 So.3d at 1092-93 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  In order to show prejudice, a defendant must demonstrate that but for counsel's deficient performance, the outcome of the proceedings would have been different.  Id.

Upon review of relator's application, the state's response thereto, and this Court's opinion affirming relator's conviction and sentence, we find that the trial judge did not err in denying relator's application for post-conviction relief. Relator's argument concerning an alleged Batson challenge is misplaced as the transcript attached to relator's application reflects that counsel's discussion with the trial judge concerning the composition of the jury venire was not based upon the state's use of peremptory challenges; rather, the transcript reflects that four of the five African-Americans in the jury venire were selected to serve on the jury or as alternates, although one was subsequently excused due to a family member's medical condition.  Relator complains that his trial counsel and the court should have further investigated this jury issue before trial and held a hearing concerning same.

The Sixth Amendment does not guarantee a defendant errorless counsel. State v. Cambre, 05-888 (La. App. 5 Cir. 7/25/06), 939 So.2d 446, 460, writ denied, 06-2121 (La. 4/20/07), 954 So.2d 158, citing State v. LaCaze, 99-584 (La. 1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).  There is a strong presumption that counsel's conduct will fall within the wide range of reasonable professional assistance.  State v. Gorman, 11-491 (La. App. 5 Cir. 2/14/12), 88 So. 3d 590, 600.  Further, in order to prove ineffective assistance of trial counsel a defendant must prove that, but for counsel's errors, the outcome of the trial would have been different.  Strickland, supra.

On original appeal to this Court, relator assigned as error the sufficiency of the evidence presented against him at trial to support his conviction.  This Court, on original appeal, determined the evidence presented against the relator at trial was sufficient to support his conviction.  State v. Dennis, [118 So. 3d 1166 (La. App. 5th Cir. 2013)].  Defendant admitted at trial that he shot the victim outside of a gas station over an altercation between the victim's and relator's previous girlfriend. The jury rejected relator's argument that he shot the victim in self defense and this Court determined that that the state met its burden to prove that relator did not act in self defense and affirmed relator's conviction.  Id.  Therefore, we find that relator's conclusory allegations in his application for post-conviction relief fail to

meet his burden to prove that, absent counsel's errors, the outcome of his trial or appellate review would have been any different.[16]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[17]

Because the ineffective assistance of counsel claims were rejected by the state courts on the merits, and because such claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

---

[16] State *ex rel.* Dennis v. Cain, No. 14-KH-662, at pp. 1-2 (La. App. 5th Cir. Oct. 24, 2014); State Rec., Vol. 2 of 6.
[17] State *ex rel.* Dennis v. State, 178 So.3d 160 (La. 2015); State Rec., Vol. 2 of 6.

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-
> assistance claim can function as a way to escape rules of waiver and forfeiture and
> raise issues not presented at trial, and so the Strickland standard must be applied
> with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the
> very adversary process the right to counsel is meant to serve.  Even under *de novo*
> review, the standard for judging counsel's representation is a most deferential one.
> Unlike a later reviewing court, the attorney observed the relevant proceedings,
> knew of materials outside the record, and interacted with the client, with opposing
> counsel, and with the judge.  It is all too tempting to second-guess counsel's
> assistance after conviction or adverse sentence.  The question is whether an
> attorney's representation amounted to incompetence under prevailing professional
> norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult.  *The standards created by Strickland and
> § 2254(d) are both highly deferential, and when the two apply in tandem, review is
> doubly so.*  The Strickland standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness under §
> 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable argument that
> counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective

assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the

benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation

marks omitted).  For the following reasons, the Court finds that, under those stringently deferential

standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective

assistance of counsel claims.

As the state courts correctly noted, the United States Supreme Court established a two-

prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate

that counsel's performance was deficient *and* that the deficient performance prejudiced his

defense. Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of

proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthesen v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial."   Crockett, 796

F.2d at 793.

To prove prejudice with respect to a claim that appellate counsel was ineffective, a

petitioner must show a reasonable probability that he would have prevailed on appeal but for his

counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see

also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a

reasonable probability that, if appellate counsel's performance had not been deficient in the

manner claimed, the appellate court would have vacated or reversed the trial court judgment based

on the alleged error.  Briseno, 274 F.3d at 210.

To the extent that petitioner is arguing that counsel was ineffective for failing to insist on

a hearing concerning his Batson challenge, that claim fails because, as the state court explained,

*there was no Batson challenge.*  Rather than contending that the prosecutor had used peremptory

challenges to exclude potential jurors on the basis of race, defense counsel simply contended that

the jury venire failed to reflect the racial composition of the parish.  The transcript reflects the

following exchange:

> MR. LEMMON [defense counsel]:
>           Your Honor, my indication of the jury venire shows that my
> estimation, if I'm correct, were that there were four African American perspective
> [sic] jurors out of however many we had, 36 or 40.  And it's the position of the
> defendant that that's not representative of the composition of the parish of
> Jefferson.  And I just want to make that objection to perfect the record.
>
> THE COURT:
>           Okay.  Objection noted.
>
> MR. LEMMON:
>           Thank you.
>
> THE COURT:
>           Before we bring the jurors in – further to your observation – I would like
> the record to reflect that two of those African-Americans were selected and are on

the jury, and one is an alternate.  And the other, just for the record, was Ms. Miro, who was the only one who was not selected.

MR. LEMMON:
        Correct, Your Honor.  One of the other alternates who was selected was allowed to leave.

THE COURT:
        So that must mean there were five, then.  Ms. Tuckerson was selected as an alternate then but excused based on surgery needed by her grandmother tomorrow for an aneurysm.

MR. LEMMON:
        Correct.

THE COURT:
        Okay.  All right.  So there were five then.  Let the record reflect that.[18]

Because defense counsel made no <u>Batson</u> challenge, he obviously had no reason to request a hearing on challenge he did not make.  Therefore, his failure to request such a hearing did not constitute deficient performance and no prejudice resulted.

Moreover, even if petitioner were perhaps attempting to argue that his counsel was ineffective for failing to make a <u>Batson</u> challenge, that claim is likewise meritless.  Where, as here, a petitioner presents no evidence showing that there was in fact a basis for such a challenge, he cannot meet his burden to prove that counsel was ineffective for failing to make such a challenge.  <u>See, e.g.</u>, <u>Stogner v. Cain</u>, Civ. Action No. 12-2703, 2013 WL 2444667, at *19 (E.D. La. June 4, 2013); <u>Jackson v. Cain</u>, Civ. Action No. 09-3258, 2011 WL 870060, at *7 (E.D. La. Feb. 15, 2011), <u>adopted</u>, 2011 WL 867486 (E.D. La. Mar. 10, 2011).

Similarly, there is no merit to petitioner's related claim that his appellate counsel was ineffective for failing to pursue a <u>Batson</u> claim on appeal.  Because there was no <u>Batson</u> challenge made at at trial, appellate counsel was *precluded* from asserting a <u>Batson</u> claim on appeal.  <u>See</u>

---

[18] State Rec., Vol. 4 of 6, transcript of August 23, 2011, pp. 3-4.

State v. Snyder, 750 So.2d 832, 840 (La. 1999).  Obviously, appellate counsel is not ineffective "in declining to raise an unreviewable issue."  Givens v. Cockrell, 265 F.3d 306, 310 (5th Cir. 2001); accord Weatherspoon v. Cockrell, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.  Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Arceneaux v. Cain, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim.").

        In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He clearly has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### **RECOMMENDATION**

        It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Travis Dennis be **DISMISSED WITH PREJUDICE**.

        A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

       New Orleans, Louisiana, this second day of June, 2017.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.